**POLSINELLI LLP**
Todd M. Malynn (State Bar No.181595)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: 310.556.1801
Facsimile: 310.556.1802
Email: tmalynn@polsinelli.com

**POLSINELLI LLP**
Hannah T. Yang (State Bar No. 311814)
Three Embarcadero Center, Suite 2400
San Francisco, California 94111
T: 415.248.2100
F: 415.248.2101
Email: hyang@polsinelli.com

**HILLYER LEGAL, PLLC**
Gregory L. Hillyer (*Pro Hac Vice - To Be Filed*)
5335 Wisconsin Avenue NW
Washington, DC 20015
T: 202.686.2884
E-mail: ghillyer@hillyerlegal.com

*Attorneys for Plaintiff Oomph Innovations LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OOMPH INNOVATIONS LLC, | Case No. |
| *Plaintiff*, | |
| v. | **COMPLAINT FOR:** |
| SHENZHEN BOLSESIC ELECTRONICS CO. LTD., | **PATENT INFRINGEMENT (35 U.S.C. § 271) AND** |
| GUANGZHOU WELLTOP ELECTRONIC CO. LTD., | **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101)** |
| and | |
| UKLISS ELECTRIC APPLIANCE CO., LTD., | |
| *Defendants*. | |

Plaintiff Oomph Innovations LLC ("Oomph"), for its Complaint against Defendants Shenzhen Bolesic Electronic Co. Ltd, Guangzhou WellTop Electronic Co. Ltd and UKLISS Electric Appliance Co., Ltd (collectively, "Defendants"), alleges as follows:

## I. INTRODUCTION

1. This case is for patent infringement and copyright infringement.

## II. JURISDICTION AND VENUE

2. The causes of action in this Complaint arise under the Patent Act, Title, 35 U.S.C. § 101 *et seq* and the Copyright Act, 17 U.S.C. § 101 *et seq*.

3. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Venue is proper in this Court pursuant 28 U.S.C. § 1391 since Defendants are foreign entities who are engaged in infringing activities and are causing harm within the district by advertising, offering to sell and/or selling infringing products to consumers in California, including through e-commerce stores that are accessible in California and operating under Merchant or Seller IDs.

## III. THE PARTIES

5. Plaintiff Oomph is a limited liability company organized under the laws of California, with its principal place of business at 21 Columbus Ave, Suite 233, San Francisco, CA 94111.

6. Upon information and belief, Defendant Shenzhen Bolesic Electronic Co. Ltd ("Shenzhen Bolesic") is a Chinese limited company doing business at 5F, No.6, East Zone of Shangxue Sci-Tech. Park, Bantian St., Longgang Dist. Shenzhen, Guangdong, China. Upon information and belief, Bolesic is doing business as Bolesic Beauty and/or UKLISS.

7. Upon information and belief, Guangzhou WellTop Electronic Co. Ltd ("WellTop Electronic") is a Chinese limited company doing business at No. 11-0218, No. 385 Gongyedadao Middle, Haizhu District, Guangzhou, China. Upon

information and belief, WellTop Electronic is doing business as WellTop.

8. Upon information and belief, UKLISS Electric Appliance Co., Ltd. ("UKLISS Electric") is a Chinese limited company doing business at the addresses of Shenzhen Bolesic, WellTop Electronic, or elsewhere in China. Upon information and belief, UKLISS Electric is doing business as UKLISS.

9. Upon information and/or belief, Defendants, and each of them, are agents, subsidiaries or related entities of the other, are co-conspirators in the commissions of the wrongful acts and omissions alleged herein, aid and abet those wrongful acts and omissions, and/or are *alter egos* of the other, at least for purposes of avoiding fraud if their separate identities were recognized and upheld. Accordingly, Defendants, and each of them, are vicariously liable for the wrongful acts and omissions of the others.

## IV. GENERAL ALLEGATIONS

### A. PLAINTIFF'S REVOLUTIONARY "VOLOOM" HAIR VOLUMIZER

10. Plaintiff is the creator of the revolutionary hair volumizer VOLOOM.



11. VOLOOM is designed to add enhanced structure and volume to hair through the use of two heated, opposed and interlocking ceramic-coated plates which seal the hair cuticle and protect it from damage.

12. When used in the under-layers of hair, VOLOOM creates "volume pockets" that lift and separate the individual layers up and away from the scalp.

13. Unlike flat irons that are pulled through the ends of hair (most prone to damage), VOLOOM is designed to be used on the hair near the scalp that is rich in natural protective oils. VOLOOM therefore removes the need for excess mousses,

gels or sprays that can weigh hair down and leave it looking flat, dull and lifeless. Since the volume is heat-locked into the hair the "VOLOOM look" can last for several days at a time.

14. Oomph markets and sells the VOLOOM product through its website, www.voloom.com. The VOLOOM product sells for a retail price of $103.99 to $129.99 depending on the retail outlet and other circumstances. The website provides extensive content, including product information, instructions for use, videos demonstrations, hints and tips, FAQs and customer reviews.

15. Oomph also sells the VOLOOM product through major merchandisers and online retailers, including Amazon and Wal-Mart.

16. VOLOOM has achieved enormous success and received an overwhelming amount of unsolicited, third-party media attention. For example, VOLOOM has been offered for sale, featured in, or appeared on the websites of: The Today Show, the Huffington Post, Reader's Digest, Elle, InStyle, The Doctors, Christabelle's Closet, The Makeup Examiner, Allure, Fashion Scoops, HSN and Modern Salon, among others.

**B.   PLAINTIFF'S PATENT RIGHTS**

17. On September 23, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,839,802 ("the '802 Patent"), entitled "Hair Volumizer Device That Employs Individual Teeth Without Leaving A Visible Pattern." A true and correct copy of the '802 Patent is attached as Exhibit A.

18. Oomph is the sole owner of right and title to the '802 Patent.

19. Oomph marks the packaging and/or inserts of the commercial embodiments of the '802 Patent, and affixes the website www.voloom.com, which in turn, lists the '802 Patent number in compliance with the marking requirements of 35 U.S.C. § 287.

## C. PLAINTIFF'S COPYRIGHTS

20. Plaintiff has created original works of authorship, including literary and graphical content which are used in the promotion and sale of VOLOOM.

21. Plaintiff has developed common law copyrights in these works, and has complied, or is complying, with the requirements for federal registration under 17 U.S.C. 101, *et seq*.

22. Oomph is the owner of the literary work entitled "Voloom Hair Volumizing Iron," Copyright Application Serial Number, 1-6873712050, a true and correct copy of which is attached as Exhibit B. This work is used in connection with promotional materials for VOLOOM.

23. Oomph is the owner of the literary work entitled "Voloom Hair Volumizing Iron," Copyright Application Serial Number, 1-6873712006, a true and correct copy of which is attached as Exhibit C. This work is used in connection with instructions for VOLOOM.

24. Oomph is the owner of the literary work entitled "Voloom Hair Breakthrough Hair Volumizing Technology, Copyright Application Serial Number: 6873711961, a true and correct copy of which is attached as Exhibit D. This work is used as instructions for the operation of VOLOOM.

25. The images in the "Voloom Hair Volumizing Iron" instructions appearing in Exhibit C and Exhibit D are also the subject of Copyright Application Serial Number 1-690050577 and Copyright Application Serial Number 1-689952971, respectively.

26. All of the aforementioned Copyright Applications Serial Numbers and associated works are referred to collectively herein as the "Copyrighted Works."

## D. DEFENDANTS' UNLAWFUL AND INFRINGING ACTIVITIES

27. Defendants have engaged, and are engaging in, reckless, blatant and repeated infringement of Plaintiff's intellectual property rights.

28. UKLISS Electric's website www.ukliss.com offers for sale and sells a

product virtually identical to VOLOOM referred to as "Hair Volumizing Iron Flat Iron" ("UKLISS Website").  A true and correct screenshot of the UKLISS Webpage offering this product for sale is attached as Exhibit E.  The product is offered for a sale price of $44.00.  Ex. E.

29. The UKLISS "Hair Volumizing Iron Flat Iron" contains all of the elements of at least claim 1 of the '802 Patent (hereinafter "Accused Product").

30. Claim 1 of the '802 Patent is directed to a device for volumizing hair. The Accused Product is called a "hair volumizing [iron] flat iron."

31. The device of claim 1 recites "a first arm comprising a first interlocking plate" and "a second arm comprising a second interlocking plate."  The Accused Product has two arms, both of which contain an interlocking plate.  Ex. E.



32. The device of claim 1 recites "at least one heating element associated with any of said first interlocking plate and said second interlocking plate."  The Accused Product contains control buttons on the top of the device (for heating the interlocking plates) and a digital temperature display.  Ex. E.  The UKLISS Webpage also describes the temperature ranges of the "heating plate." *Id*.

33. The device of claim 1 recites "a pivot positioned between said first arm and said second arm and arranged to allow relative movement of the interlocking plates between an interlocked position and a non-interlocked position." The arms of the Accused Products are connected with a pivot and the product is shown in both the locked and unlocked position.  Ex. E.



34. The device of claim 1 recites "first and second interlocking plates each comprising a two dimensional array of outwardly projecting individual teeth." The Accused Products contains a two dimensional array of outwardly projecting individual teeth on plates which interlock (as shown in the closed position). Ex. E.

35. The device of claim 1 recites "wherein the array of outwardly projecting individual teeth of the first interlocking plate is interlockingly complementary to the array of outwardly projecting individual teeth of the second interlocking plate." The teeth of the two plates in the Accused Product lock in a complimentary fashion (as shown in the closed position). Ex. E.

36. The device of claim 1 recites "wherein each individual tooth comprises a flat top surface." The teeth of the Accused Product have a flat top surface. Ex. E.

37. The device of claim 1 recites "wherein the two dimensional array of individual teeth comprises a checkerboard pattern." The two dimensional array of individual teeth of the Accused Product have a checkerboard pattern. Ex. E.

38. Product reviews appearing on the UKLISS Website demonstrate a misunderstanding among the consuming public that the Accused Product is an equally available and comparable, but less expensive version of VOLOOM. For example, one customer claims "I have fine, thin, straight hair. I've tried many root-boosting. This item works wonders! It heats up quickly, takes only a few minutes to volumizing my hair, It also cheaper than voloom." Another customer claims "This dasign (sic, design) is different for the voloom, it is cheaper than voloom, but the function is the same as voloom." Ex. E.

39. The UKLISS Website perpetuates this myth, in part, by attributing the design of the Accused Product and the exclusive rights therein to UKLISS itself by referring to the "[p]atent pending plate design." Ex. E.

40. The UKLISS Website attributes the site content to UKLISS Electric, however, the federal trademark registration for "UKLISS" is assigned to Shenzen Bolesic. A true and correct copy of the registration is attached as Exhibit F.

41. The UKLISS Website also refers to the availability of the Accused Product through Amazon and AliExpress (a/k/a Alibaba). Ex. E. The product is sold through these online retailers ranging from $22.50 to $44.79. Screenshots of the Amazon and Alibaba pages where the UKLISS Hair Volumizing Iron Flat Irons are offered for sale (and can be purchased) are attached as Exhibit G and Exhibit H, respectively.

42. Certain Accused Product offered through Amazon reflects the provider as "ukliss." Ex. G. Another reflects the name "YokPollar" which, on information and belief, is supplied by one or more of the Defendants. Plaintiff's genuine and patented products (also offered through Amazon) appear below the Accused Products under the words "Sponsored products related to this item" and "Customers who bought this items also bought." Searches of "VOLOOM," "hair volumizer iron" and variants thereof provide results for both the Accused Product and Plaintiff's genuine patented product. The customer reviews of the Accused Product attribute the product features, benefits and performance to the Defendants.

43. The Accused Product offered through Alibaba reflects the provider as Shenzhen Bolesic (adjacent to the name "Bolesic Beauty"). Ex. H. The Alibaba webpage also features an instructional video containing the legend "WellTop," wherein the names "WellTop," "UKLISS," and "Bolesic Beauty" repeatedly appear together (accounting for and associating all three Defendants). The Alibaba website also includes a "Company Profile" tab which features a video overview of Shenzhen Bolesic that describes WellTop as a "subsidiary."

44. The UKLISS Website contains descriptions of the Accused Products that were copied directly from one or more of Plaintiff's Copyrighted Works.

45. For example, the Accused Product descriptions claims it (i) "is a revolutionary new kind of hair iron that is specifically designed to add lasting volume to" short to medium length, layered or fine hair; (ii) "creates hidden volume pockets that lift the top layers up and away from the scalp" … [b]y lifting and

separating individual hairs"; (iii) "designed to be used only on the hair near the scalp that is rich in natural protective oils – your own natural heat protection.  It is never pulled through the hair or used on the ends of hair most prone to damage"; (iv) "has protective ceramic-coated plates, as well as ionic technology that helps seal the hair cuticle and protect it from damage.  You'll find that you need to shampoo, color, and heat-style your hair less often." Ex. E.  This content is the same as, or substantially similar to, Plaintiff's Copyrighted Works.  Ex. B.

46.    Similar statements infringing one or more of Plaintiff's Copyrighted Works appear on the Amazon website under the headers "Product description" and "About the Product."  In addition to the statements noted above, the Accused Product description claims (i) it "gives the appearance of greater hair volume to short to medium length hair and finer hair;" (ii) "eliminates the need for costly blowouts and hair styling products such as volumizing sprays, gels and mousses that weigh hair down"; (iii) "[o]ur hair iron has alternating beveled platforms that create volume pockets in the under layers of hair"; (iv) [d]esigned specifically for your short to medium length hairstyles to give you lasting hair volume, so you can extend the amount of time between shampoos and colorings." Ex. G.  This content is the same as, or substantially similar to, Plaintiff's Copyrighted Works.  Ex. B.

47.    Comparable statements to those set forth above are made on the Alibaba website which are the same as, or substantially similar to, Plaintiff's Copyrighted Works.  Ex. H.

48.    A competitive purchase of the Accused Product was made from the UKLISS Website.  True and correct photographs of the Accused Product ordered and received (including User Manual) are attached as Exhibit I.  The User Manual contains content and images that are the same as, or substantially similar to, one or more of Plaintiff's Copyrighted Works, including the text of the instructions and images intended to demonstrate the use of the product.  Exs. C, D and Ex. I.

49.    A second competitive purchase of the Accused Product was made,

9
COMPLAINT FOR PATENT AND COPYRIGHT INFRINGEMENT

which, on information and belief, was provided by WellTop. True and correct photographs of the Accused Product ordered and received are attached as Exhibit J.

## F. PLAINTIFF'S EFFORTS TO STOP THE INFRINGING ACTIVITIES

50. Plaintiff has made repeated efforts to address the infringing activities.

51. In May 2018, for example, Oomph's counsel sent a letter to Shenzhen Bolesic and UKLISS Electric—*translated into Chinese*—demanding that the infringement stop after prior email notifications had failed to elicit a response. A true and correct copy of this correspondence is attached as Exhibit K.

52. In August 2018, unnamed individuals with an email address reflecting "WELLTOP" responded to Mr. Schwartz. A true and correct copy of the correspondence is attached as Exhibit L. With respect to the allegations of infringement of the '802 Patent, the purported WellTop representative enumerated meaningless differences between VOLOOM and the Accused Product, including color, general appearance, minor structural differences and missing functional features. Ex. L. None of these distinctions are patently significant to the claimed subject matter. The email terminates with the words "ukliss beauty."

## E. DISCOVERY OF DEFENDANTS' FALSE CERTIFICATIONS

53. After receiving "WELLTOP's" August 2018 response to Oomph's letter, Oomph tendered this matter to patent counsel to investigate the instant action against Defendants and service through the Hague Convention. In this process, Oomph's counsel discovered Defendants' false safety certifications.

54. There are recognized safety standards for electronic consumer products sold in the United States. Testing under and compliance with these safety standards protect consumers from defective and dangerous products, including electronic shorts that can cause burns and fires. Compliance with these standards enables manufacturers to advertise their electronic products as safe and effective for their intended use as corroborated with published marks on product labeling.

55. For example, the ETL Listed Mark ("ETL") is proof that an electronic

product has been independently tested and meets the applicable published standard. The ETL mark serves as proof of compliance with North American safety standards, and it is relied upon by consumers when purchasing electronic products for use at home, including in this case for hair and near one's face.

56. Plaintiff has authorization to use the ETL mark in connection with the VOLOOM Product. A true and correct copy of this authorization is attached as Exhibit M. Plaintiff marks its VOLOOM product with the ETL mark to advise the public that it has undergone testing and complies with the safety standards. Ex. M.

57. To compete with Plaintiff, Defendants likewise represent to the public that the Accused Products have achieved certifications for compliance and safety, including ETL, UL and others. The purported certifications are presented on the UKLISS Website and the Alibaba website. *See* Exs. E and H.

58. However, upon analysis of the Accused Products for this proceeding, it was discovered that they do not bear the marks associated with these certifications (*e.g.*, "ETL" or "UL"). *See* Exs. I and J. This resulted in further inquiry and discovery that Defendants' display the same certifications in connection with multiple different products and the images are of such bad quality that they cannot even be deciphered. Exs. E and H.

59. Accordingly, on information and belief, the Accused Products are not certified under ETL, UL or other comparable U.S. safety and compliance standard, but are inferior in quality.

V. CAUSES OF ACTION

COUNT I

PATENT INFRINGMENT UNDER 35 U.S.C. § 271

(Against All Defendants)

60. Plaintiff repeats and realleges the allegations in paragraphs 1 to 59 above as if fully set forth herein.

61. Plaintiff is the owner of the '802 Patent.

62. Defendants have directly infringed and continue to directly infringe—literally and under the doctrine of equivalents—one or more claims of the '802 Patent by making, using, selling, and/or offering for sale the Accused Products.

63. Defendants have in the past and continue to indirectly infringe—either by inducing the infringement of others or by contributing to that infringement—one or more claims of the '802 Patent by making, using, selling, and/or offering for sale the Accused Products.

64. Thus, by making, using, selling, offering for sale and/or importing the Accused Products, Defendants infringe one or more claims of the '802 Patent under 35 U.S.C § 271(a), (b), and/or (c).

65. Defendants acts of patent infringement have been willful.

66. Plaintiff has no adequate remedy at law.

67. Defendants' patent infringement is causing irreparable injury to Plaintiff and, unless enjoined, will continue to cause irreparable injury.

68. As a result of Defendants' intentional and willful infringement, Plaintiff is entitled to an injunction and damages in a sum to be determined.

## COUNT II
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501
### (Against All Defendants)

69. Plaintiffs repeat and reallege the allegations in paragraphs 1 to 59 above as if fully set forth herein.

70. Plaintiff is the owner of the Copyrighted Works.

71. Defendants had access to and copied the Copyrighted Works.

72. Defendants' conduct has been without the permission, consent, or license of Plaintiff.

73. Defendants have, by virtue of above-described acts, directly infringed upon one or more of Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 101 *et seq.*, including 17 U.S.C. § 501.

74. Defendants acts of infringement have been willful.

75. Plaintiff has no adequate remedy at law.

76. Defendants' infringement of the Copyrighted Works is causing irreparable injury to Plaintiff and, unless enjoined, will continue to cause irreparable injury.

77. As a result of Defendants' intentional and willful copyright infringement, Plaintiff is entitled to an injunction and damages in a sum to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in its favor on all Counts of this Complaint and request the following relief:

1. Enter a judgment that Defendants have infringed one or more claims of the Patent-in-Suit under 35 U.S.C. § 271;

2. Permanently enjoin Defendants, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of the Patent-in-Suit;

3. Award Plaintiff damages adequate to compensate for Defendants' infringing acts, at a minimum at reasonable royalty, in accordance with 35 U.S.C. § 284;

4. Increase Plaintiff's damages award up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

5. Award Plaintiff interest and costs pursuant to 35 U.S.C. § 284;

6. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses and costs incurred in this action;

7. Enter a judgment that Defendants have infringed one or more of the Copyrighted Works under 17 U.S.C. § 501;

8. Permanently enjoin Defendants, their respective officers, agents,

servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing the Copyrighted Works of Plaintiff in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of the Copyrighted Works;

9. Award Plaintiff damages to account for all gains, profits and advantages derived by Defendants from their infringement of the Copyrighted Works or such damages as to the Court shall appear proper within the provisions of the copyright statutes;

10. Award pre-judgment interest on the judgment;

11. Award costs and attorneys' fees; and

12. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Dated: September 11, 2018                                **POLSINELLI LLP**

                                                         By:  Todd M. Malynn, Esq.
                                                         *Attorneys for Plaintiff*